**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>JEFFREY B. MOULD</td><td>*</td><td></td></tr>
<tr><td>    Plaintiff</td><td>*</td><td></td></tr>
<tr><td>    v.</td><td>*</td><td>CIVIL NO. JKB-13-1305</td></tr>
<tr><td>NJG FOOD SERVICE INC., <em>et al.</em></td><td>*</td><td></td></tr>
<tr><td>    Defendants</td><td>*</td><td></td></tr>
</table>

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This memorandum and the accompanying order address motions in the two actions consolidated under this caption. Jeffrey B. Mould brought his suit against NJG Food Service, Inc. ("NJG"), OC Crabbag, LLC ("Crabbag"), Nolen J. Graves, and Albert Levy (collectively "Defendants") for violations of the Fair Labor Standards Act of 1928 ("FLSA"), 19 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Labor & Employment §§ 3-401 *et seq.*, the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann. Labor & Employment §§ 3-503 *et seq.*, the Internal Revenue Code ("IRC"), 29 U.S.C. § 7434, as well as for the common law torts of conversion and unjust enrichment. Kathleen Yanek and Julianne Lodowski (collectively with Mould, "Plaintiffs") brought their suit on behalf of themselves and others similarly situated as a collective and class action against Defendants for violations of the FLSA, the MWHL, the MWPCL, and for the common law torts of conversion and unjust enrichment. Now before the Court are (1) Defendants' motions to dismiss (ECF Nos. 35; JKB-13-2183, No. 9.) [1], (2) Plaintiff Mould's motion for leave to file a

---

[1] Except where otherwise noted, all ECF numbers refer to the docket in *Mould v. NJG Services*, JKB 13-1305.

second amended complaint (ECF No. 36), (3) Defendants' motion to stay discovery, consolidate, and extend time (ECF No. 37), (4) Plaintiff Mould's motion for leave to file a limited surreply to Defendants' reply to Plaintiff's opposition to Defendants' partial motion to dismiss (ECF No. 65), (5) Plaintiffs Yanek and Lodowski's motion for leave to file a second amended complaint and supplemental motion for leave to file a second amended complaint (JKB-13-2183, ECF Nos. 18, 20), and (6) Plaintiffs Yanek and Lodowski's motion for leave to file a limited surreply (JKB-13-2183, ECF No. 19). The issues have been briefed and no hearing is required. Local Rule 105.6.

For the reasons set forth below, (1) Defendants' motions to dismiss (ECF Nos. 35; JKB-13-2183, No. 9) will be GRANTED IN PART and DENIED IN PART, (2) Plaintiff Mould's motion for leave to file a second amended complaint (ECF No. 36) will be DENIED, (3) Defendants' motion to stay discovery, consolidate, and extend time (ECF No. 37) will be GRANTED[2], (4) Plaintiff Mould's motion for leave to file a limited surreply to Defendants' reply to Plaintiff's opposition to Defendants' partial motion to dismiss (ECF No. 65) will be DENIED, (5) Plainitffs Yanek and Lodowski's motion for leave to file a second amended complaint and supplemental motion for leave to file a second amended complaint (JKB-13-2183, ECF Nos. 18, 20) will be GRANTED, and (6) Plainitffs Yanek and Lodowski's motion for leave to file a limited surreply (JKB-13-2183, ECF No. 19) will be DENIED.

## I. BACKGROUND

---

[2] Defendants' motion to stay discovery, consolidate, and extend time (ECF No. 37) has already been granted with regard to consolidation. (*See* Order consolidating JKB-13-1305 and JKB-12-2183 for all purposes, including trial, ECF No. 74.) The Court now grants Defendants' requests to stay discovery and extend time.

The complaints present several identical questions of law and fact.[3,4] Mould, Yanek, and Lodowski were all employed as servers at the Crab Bag restaurant. Mould worked there from February 13, 2011 until his employment was terminated on June 23, 2013. (ECF No. 33, Mould Am. Compl. ¶¶ 3, 12.) Yanek worked there from October 2009 until her employment was terminated in September 2012. (JKB-13-2183, ECF No. 3, Yanek Sec. Am. Compl., ¶ 3.) Lodowski worked there from August 2009 until her employment was terminated in September 2012. (*Id*. at ¶ 4.) Plaintiffs allege that they, and other similarly situated servers, were paid an hourly wage of $3.63 and an overtime hourly rate of $7.26 during the relevant period. (Mould Am. Compl., ¶¶ 12, 15; Yanek Sec. Am. Compl., ¶¶ 15, 18.)

During this period, Defendants utilized a tip credit to satisfy minimum wage requirements under the FLSA and the MWHL. (Mould Am. Compl., ¶¶ 13-14; Yanek Sec. Am. Compl., ¶¶ 16-17.) In addition, Defendants instituted a tip pooling arrangement. (*Id*.) Plaintiffs allege that both the tip pooling arrangement and the use of a tip credit violated the FLSA and the MWHL. (Mould Am. Compl., ¶ 14; Yanek Sec. Am. Compl., ¶ 17.)

In support of this claim, Plaintiffs allege that Defendants failed to give Plaintiffs notice about any tip credit they were utilizing to meet minimum wage requirements. (*Id*.) Plaintiffs further allege that they, and others similarly situated, were coerced by Defendants into participating in a tip pooling arrangement, whose terms violated the FLSA and the MWHL. (*Id*.) Specifically, from approximately December 2011 until June 2013, Defendants required servers to contribute either 2.5% of net sales for the shift ("A.M. percentage") or 5% of net sales for the shift ("P.M.

---

[3] The facts are recited here as alleged by the Plaintiffs, this being a ruling on motions to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

[4] The motions to dismiss at issue here address Mould's first amended complaint (ECF No. 33) and Yanek and Lodowski's second amended complaint (JKB-13-2183, ECF No. 20-1). The Court's decision to consider Defendants' motion to dismiss Plaintiff s Yanek and Lodowski's complaint (JKB-13-2183, ECF No. 9) in relation to Plaintiffs Yanek and Lodowski's second amended complaint (JKB-13-2183, ECF No. 20-1) is explained later in this section.

percentage") to the tip pool.  (*Id.*)  Included in this calculation were non-food sales (e.g., sales of The Crab Bag t-shirts), unpaid tabs and compensated meals (e.g., meals eaten by Defendants or other employees of the Crab Bag and meals that customers refused to pay for), and mandatory service charges.  (*Id.*)  Servers were required to place an envelope containing their required contribution to the tip pool in the tip-out safe at the end of each shift. [5]  (Mould Am. Compl., ¶ 14; Yanek Am. Compl., ¶¶ 17, 66.)  This policy applied to any shift in which a busboy or foodrunner was present, irrespective of the number of such employees present or the amount of time such employees spent on the shift.  (*Id.*)  The money that servers contributed to the tip pool was then "distributed to various employees beyond just the busboys and foodrunners . . . including . . . line cooks, steamers, employees at the raw bar, carryout cashiers, carryout cooks, an prep cooks, and, upon information and belief, members of management."  (*Id.*)  Plaintiffs further allege that both the amounts to be contributed to the tip pool by Plaintiffs and the amounts distributed to other employees "changed at the direction and whim of Defendants." (Mould Am. Compl., ¶ 14; Yanek Am. Compl., ¶ 17.)  In particular, "[d]efendants continually attempted to exert their influence and coercion to keep the exact nature and application of the tip pool secret and have repeatedly disciplined employees, up to termination of employees, for questioning the validity of the tip pool and tip credit."  (*Id.*)

Plaintiff Mould also alleged Defendants terminated his employment in retaliation against him for complaining about Defendants' pay practices.  (*Id.* at ¶ 71.)  Specifically, after he filed his initial complaint in the present case (ECF No. 1), on June 14, 2013, he informed other servers about this lawsuit and their rights under the FLSA, the MWHL, and other statutes.  (Mould Am. Compl., ¶ 18.)  On June 23, Defendant Levy informed Mould that there had been complaints

---

[5] The *Yanek* complaint alleges, more specifically, that the tip pool contributions were placed "into an envelope by each contributor, marked with that employee's name, and identifying exactly what the employee put into the envelope."  (Yanek Sec. Am. Compl, ¶ 66.)

against him and that, as a result, he was suspended indefinitely. (*Id*.) Mould was then escorted off the premises and informed that he was no longer permitted on The Crab Bag property. (*Id*.) On June 27, Mould was advised that his employment was terminated. (*Id*.) Mould has alleged that during his tenure at the Crab Bag, he was never disciplined and never received any write-up regarding disciplinary action. (*Id*.)

In support of his claim under the Internal Revenue Code, Mould has alleged that, as of December 2011, Defendants instructed him and other servers not to report any tips (i.e., to enter the amount of $0) into the DIGITAL DINING system used by Defendants to keep track of the hours worked by servers. (*Id*. at ¶¶ 52-53.) Mould further alleges that as a result of this policy, Defendants willfully over-reported the tips he earned on his 2012 W-2 by $10,000. (*Id.*)

Plaintiff Mould filed his original complaint with this Court on May 1, 2013. (ECF No. 1.) On June 5, Defendants filed their answer to the original complaint. (ECF No. 8.) On September 4, with leave from the Court, Mould filed the amended complaint that is the subject of this motion to dismiss. [6] (Mould Am. Compl.) Defendants filed the present motion to dismiss on September 5. (ECF No. 35.)

On June 28, Defendants made a first offer of judgment to Plaintiff Mould.[7] (ECF No. 35-2.) In this first offer of judgment, which Defendant had until July 15, 2013 to accept, Defendants offered to have judgment entered against them in the amount of $40,000 "representing full judgment to settle, release and satisfy any and all causes of action brought, or which could have been brought, in the above-captioned civil action by Plaintiff Mould." (*Id.*) On August 30,

---

[6] The Court notes a confusing stray reference to "wrongful discharge under Maryland law" in Plaintiff's amended complaint. (Mould Am. Compl. ¶ 18.) The complaint does not include a count of retaliation or other unlawful discharge under Maryland law. (*Id.*) This comports with the clear instructions in the Court's August 21, 2013 order, granting Plaintiff leave to file his first amended complaint, that "[t]he amended complaint shall not include a claim for the tort of abusive discharge under Maryland law." (ECF No. 26.) The Court will therefore treat this stray reference to "wrongful discharge under Maryland law" as a clerical error.

[7] The certificate of service is dated July 28, 2013. (ECF 35-2 at 4.) The Court assumes this is a clerical error and should read June 28, 2013.

Defendants again offered to have judgment entered against them. (ECF No. 35-3.) In this second offer of judgment, Defendants offered to have judgment entered against them in the amount of $35,151.20 with regard to the "minimum wage and overtime claims that Mr. Mould has advanced under the Fair Labor Standards Act (FLSA) and Maryland Wage Hour Law (MWHL)." (*Id.*) The offer did not cover Mould's other claims. (*Id.*) In both offers of judgment, Defendants agreed to pay reasonable attorney's fees and costs as determined by the Court. (ECF Nos. 35-2, 35-3.) Plaintiff Mould did not accept either of Plaintiffs' offers.

On September 9, Mould filed a motion for leave to file a second amended complaint (ECF No. 36), and Defendants filed a motion to stay discovery, consolidate cases, and extend time to answer Count X (ECF No. 37.) On October 28, Mould filed a motion for leave to file a limited surreply to Defendants' reply to Plaintiff's opposition to Defendants' partial motion to dismiss.[8]

Plaintiffs Yanek and Lodowski filed their original complaint on July 26 2013. (JKB-13-2183, ECF No. 1.) On August 16, Defendants filed the present motion to dismiss. (JKB-13-2183, ECF No. 9.) On September 4, Plaintiffs Yanek and Lodowski filed a first amended complaint. (JKB-13-2183, ECF No. 16.) On October 3, Plainitffs Yanek and Lodowski filed a motion for leave to file a second amended complaint (JKB-13-2183, ECF No. 18.) and a supplemental motion for leave to file a second amended complaint. (JKB-13-2183, ECF No. 20.) As a technical matter, Defendants' motion to dismiss is mooted by the filing of Plaintiffs Yanek and Lodowski's amended complaint (JKB-13-2183, ECF No. 16), which supersedes the original complaint. In cases like the present one, where the amended complaint is similar to the original complaint, this Court ordinarily gives defendants an opportunity to advise it of whether the motion to dismiss should be considered in relation to the amended complaint or whether

---

[8] Other motions relative to Plaintiff Mould's case are also pending before this Court. These will be addressed separately.

defendants would like an opportunity to file a revised motion to dismiss that specifically addresses the amended complaint. Here, however, given that Defendants' reply to Plaintiffs' opposition to Defendants' motion to dismiss (JKB-13-2183, ECF No. 17) specifically addresses the first amended complaint, the Court deems that Defendants intended for the Court to consider their motion to dismiss in relation to the first amended complaint. Further, given that (1) the Court is granting Plaintiffs' motion for leave to file a second amended complaint (JKB-13-2183, ECF Nos. 18, 20), and (2) that the modifications in the Plaintiffs' second amended complaint (the addition of two named plaintiffs and miscellaneous minor corrections) are minor and irrelevant to the Court's ruling on Defendants' motion to dismiss, and (3) that there has been extensive briefing on Plaintiff's motion for leave to file a second amended complaint, the Court will, in the interest of clarity and judicial economy, consider Defendants' motion to dismiss in relation to Plaintiffs' second amended complaint. (JKB-13-2183, ECF No. 20-1.)

On August 1, 2013, Defendants made offers of judgment to Plaintiffs Yanek and Lodowski. (JKB-13-2183, ECF No. 9-2.) Defendants offered Plaintiff Yanek to have judgment entered against them in the amount of $13,200, "representing full judgment to settle, release and satisfy any and all causes of action brought or which could have been brought , in the above-captioned civil action by Plaintiff Yanek." (*Id.*) The offer, which Plaintiff Yanek had until August 15, 2013 to accept, also provided that Plaintiff Yanek was authorized to "file [] a Motion for Attorneys' Fees and/or a Bill of Costs." (*Id.*) Defendants' offer to Plaintiff Lodowski was on the same terms as their offer to Plaintiff Yanek, with the exception that Defendants offered Plaintiff Lodowski $10,750. (*Id.*) Neither Yanek nor Lodowski accepted Defendants' offer.

On October 7, Plaintiffs Yanek and Lodowski filed a motion for leave to file a limited surreply to Defendants' motion to dismiss. (JKB-13-2183, ECF No. 19.)[9] On November 12, 2013, this Court ordered that the case filed by Plaintiff Mould and the case filed by Plaintiffs Yanek and Lodowski be consolidated for all purposes, including trial, and that all subsequent pleading and papers be captioned as Civil Action No. 1:13-cv-1305-JKB. (ECF No. 74; JKB-13-2183, ECF No. 30.)

## II.   LEGAL STANDARDS

### A.  Motion to Dismiss under Rule 12(b)(6)

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 556 U.S. at 679.

### B.  Motion to Dismiss under 12(b)(1)

---

[9] Defendants' motion to compel arbitration (JKB-13-2183, ECF No. 22) is also pending. However, the Court will address it in a separate order.

Motions to dismiss for lack of subject matter jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(1). Where the court's subject matter jurisdiction is in dispute, the plaintiff bears the burden of proving that jurisdiction exists. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). In determining its own jurisdiction, the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991). The court should grant a Rule 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

### C. Motion to File an Amended Complaint

Generally, leave to file an amended or supplemental pleading should be "freely give[n] where justice so requires." FED. R. CIV. P. 15(a)(2). A district court may deny leave, however, if: (1) the new pleading would prejudice the opposing party; (2) the moving party has acted in bad faith; or, (3) the new pleading would be futile (*i.e.*, if it could not withstand a motion to dismiss). *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006); *Perkins v. U.S.*, 55 F.3d 910, 917 (4th Cir. 1995). If a district court chooses to deny leave, it must give justifying reasons. *See id.* (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

However, where a motion for leave to amend pleadings is filed beyond the deadline set forth in the scheduling order, it will only be granted if it satisfies both the "good cause" standard of Rule 16(b)(4) and the standard of Rule 15(a)(2) for allowing amendment of pleadings. Fed. R. Civ. P. 16(b)(4); 15(a)(2). *See Moses v. Cowan Distrib. Servs., Inc.*, Civ. No. JKB-10-1809, 2012 WL 527657, at *2 (D. Md. Feb. 16, 2012). *See also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298-99 (4th Cir. 2008) (noting tension between Rule 15 and Rule 16; not reaching

district court's Rule 15(a) finding of futility because it affirmed district court's Rule 16(b) application of "good cause" standard); *Odyssey Travel Center, Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 631 (D. Md. 2003) ("once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b); if the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under [Rule] 15(a)").

The analysis under Rule 16(b) is less focused on the substance of the proposed amendment and more concerned with the timeliness of the motion to amend "and the reasons for its tardy submission." *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373-74 (D. Md. 2002). A court's scheduling order "'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril,'" *Potomac Electric Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 376 (D. Md. 1999), *quoting Gestetner v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D. Me. 1985). "'Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.' . . . Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Potomac Elec.*, 190 F.R.D. at 375 (citations omitted).

## III. ANALYSIS

### A. Motions to Dismiss (ECF Nos. 35; JKB-13-2183, No. 9)

Defendants have moved to dismiss Counts I through IX of Plaintiff Mould's first amended complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 35.) This partial motion to dismiss does not seek the dismissal of Count X (Violation of the Fair Labor Standards Act—Retaliation). (*Id.*) Defendants have also moved to dismiss Plaintiffs Yanek and Lodowski's entire case, pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure. (JKB-13-2183, ECF No. 9.) Given that these motions to dismiss address many identical issues of law and fact, the Court will consider them together, claim by claim.

### 1. Conversion and Unjust Enrichment Claims (Mould Am. Compl., Counts VIII and IX; Yanek Sec. Am. Compl., Counts VI and VII)

Defendants seek to dismiss Plaintiff Mould's Counts VIII (Conversion) and IX (Unjust Enrichment) (ECF No. 35) and Plaintiffs Yanek and Lodowski's Counts VI (Conversion) and VII) (Unjust Enrichment) (JKB-13-2183, ECF No. 9) on the basis that these fail to state a cause of action. The Court finds that these common law claims are preempted by the FLSA.

A claim for unjust enrichment, also referred to as *quantum meruit*, has three elements. *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 352 (Md. 2007). A plaintiff must show: (1) a benefit conferred upon the defendant by the plaintiff; (2) the defendant appreciated or knew about the benefit; and (3) the defendant accepted the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. *Id.*; *Quickley v. Univ of Maryland Med. Sys. Corp.*, CCB-12-321, 2012 WL 4069757 (D. Md. Sept. 14, 2012). As for conversion, it consists of the "wrongful deprivation of a person of property to the possession of which he is entitled." *Darcars Motors of Silver Spring*, *Inc. v. Borzym*, 841 A.2d 828, 836 (Md. 2004) (quoting *Wallace v. Lechman & Johnson, Inc.*, 732 A.2d 868, 874 (Md. 1998).

At issue here is whether Plaintiffs' conversion and unjust enrichment claims arise out of their FLSA claim, as Defendants argue, or whether they have an independent basis, as Plaintiffs claim. Indeed, as the Fourth Circuit held in *Anderson v. Sara Lee Corp*, 508 F.3d 181 (4th Cir. 2007), the remedies provided by the FLSA are the exclusive remedies for violations of its mandates. *Id.* at 194 (citing *Kendall v. City of Chesapeake, Va.*, 174 F.3d 437 (4th Cir. 1999)). *See also*

*Quickley v. Univ of Maryland Med. Sys. Corp.*, CCB-12-321, 2012 WL 4069757 (D. MD. Sept. 14, 2012 ("[T]he federal statute [, i.e. the FLSA,] nonetheless preempts common law claims for rights protected by the FLSA.")  Therefore, in order to successfully plead a cause of action, Plaintiffs must establish the elements of these common law torts without relying on any rights that arise solely from the FLSA.

Here, in support of their claim of conversion, Plaintiffs have alleged that "Defendants knowingly and purposely took and interfered with Plaintiffs' . . . personal property, *viz.*, the gratuities held in the 'tip pool'" by "improperly and intentionally divert[ing] a portion of the 'tip pool' to compensate employees who do not customarily and regularly receive tips, including members of management."  (Mould Am. Compl. ¶ 57; Yanek Sec. Am. Compl. ¶ 65). Plainttiffs further allege that they "possessed or had an immediate right to possess [the funds they contributed to the tip pool because of] . . . Defendants' requirement that Plaintiffs . . . contribute out-of-pocket funds to the "tip pool" related to sales upon which no tip was provided."  (Mould Am. Compl. ¶ 59; Yanek Sec. Am. Compl. ¶ 67.)

However, to the extent these practices—using the tip pool to compensate employees who do not regularly receive tips and requiring servers to pay into the tip pool on the basis of sales upon which no tip was provided—infringe upon Plaintiffs' rights, they infringe upon rights that arise out of the FLSA. Indeed, these practices conform to the tip pooling policy set out by Defendants, which requires Plaintiffs to contribute to the tip pool on the basis of "net sales." (Mould Am. Compl., ¶ 14; Yanek Am. Compl., ¶ 17.)  And, as the Supreme Court established in *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 397-98 (1942), absent a statutory provision to the contrary, an employer may have an arrangement with its employees "in which the employee agrees to turn over the tips to the employer." *See also Cumbie v. Woody Woo, Inc.*, 596 F.3d 577,

582 (9th Cir. 2010) (citing *Williams*, 315 U.S. 386) ("[S]ection 203(m) [of the FLSA] . . . does not alter the default rule in *Williams* that tips belong to servers to whom they are given only 'in the absence of an explicit contrary understanding' that is not otherwise prohibited. Hence, whether a server owns her tips depends on whether there existed an agreement to redistribute her tips that was not barred by the FLSA.") (internal citation omitted). Thus, Plaintiffs' conversion claim is based on rights arising out of the FLSA and lacks an independent basis.[10]

Similarly, in support of their unjust enrichment claim, Plaintiffs allege that "Defendants' requirement that Plaintiff contribute monies for unlawful inclusion in the 'tip pool' conferred a benefit upon Defendants, as Defendants, upon information and belief, retained such monies, at least in part, and used the remainder to pay other employees' wages." (Mould Am. Compl., ¶ 63; Yanek Sec. Am. Compl., ¶ 72.) Plaintiffs further allege that "Defendants' requirement that Plaintiffs . . . contribute monies for unlawful inclusion in the 'tip pool' conferred a benefit upon Defendants." (Mould Am. Compl., ¶ 63; Yanek Sec. Am. Compl., ¶ 72.) However, again, these claims ultimately rely upon the FLSA to establish that the tip pool was "unlawful." Absent the FLSA, this tip pooling is merely an arrangement between an employer and its employees "in which . . . employee[s] agree[] to turn over [part of] the[ir] tips to the employer."

Plaintiffs also allege that "Defendants appreciate and know of the benefit conferred upon them by coercing Plaintiffs . . . to contribute monies, otherwise owned by them, to the 'tip pool.'" (Mould Am. Compl., ¶ 64; Yanek Sec. Am. Compl., ¶ 73.) However, what emerges from Plaintiffs' complaints is that Defendants had a policy under which as a condition of

---

[10] The Court also notes that the funds contributed to the tip pool are not subject to conversion. Indeed, a claim of conversion can only stand where the transferred money has not been commingled with other funds. *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 968 (1999). Here, although the contributions to the tip pool were initially placed in individual envelopes, as the very name tip pool suggests, the funds were ultimately commingled and therefore are not subject to a claim of conversion.

employment, servers were required to contribute part of their compensation to a tip pool. While this policy may violate the FLSA, it is not inherently coercive.

Thus, Plaintiffs' conversion and unjust enrichment claims lack a basis that is independent from their FLSA claims. Given that the FLSA provides the exclusive remedy for violations of its mandates, the Court finds that these claims are preempted by the FLSA.

### 2. MWPCL Unlawful Deductions, Minimum Wage, and Overtime Claims (Mould Am. Compl., Counts III and VI; Yanek Sec. Am. Compl.. Counts III and V)

In Count III of his amended complaint, Plaintiff Mould alleges that "through the improper tip pooling and tip credit arrangements[,]" Defendants unlawfully "deducted and withheld portions of [his] . . . wages[,]" in violation of § 3-503 of the MWCPL. Md. Code Ann., Labor & Employment § 3-503. However, § 3-503 does not give rise to a private right of action. Indeed, § 3-507.2(a), which authorizes employees to file suit under the MWCPL, applies only where "an employer fails to pay an employee in accordance with § 3-503 or § 3-505 of this subtitle." § 3-507.2(a); *see also Marshall v. Safeway, Inc*., 63 A.3d 672, 685 (Md. Sp. App., 2013) (holding that § 3-503 does not give rise to a private cause of action). Therefore, Plaintiff Mould cannot maintain a private action for violations of § 3-503 and Count III of his amended complaint fails to state a proper cause of action.

In Count III of their second amended complaint, Plaintiffs Yanek and Lodowski allege that "Defendants knowingly failed to pay Plaintiffs' . . . wages timely and upon termination of employment" because Defendants used "improper tip pooling and tip credit arrangements." This conduct, Plaintiffs argue, violates §§ 3-502 and 3-505 of the MWPCL. (Yanek Sec. Am. Compl., ¶ 52.) Further, Plaintiff Mould, in Count VI of his amended complaint, and Plaintiffs Yanek and Lodowski, in Count V of their second amended complaint, allege that Defendants "have failed to pay Plaintiffs . . . one and a half-times (1.5x) their regular rate of pay for all hours

worked in excess of forty (40) in a workweek, in violation of the FLSA." (Mould Am. Compl., ¶ 49; Yanek Sec. Am. Compl., ¶ 62.) This too, Plaintiffs allege, violates §§ 3-502 and 3-503 of the MWCPL. (*Id.*)

However, Count III and VI of Plaintiffs Yanek and Lodowski's second amended complaint and Count V of Plaintiff Mould's complaint also fail to state a proper cause of action. As this Court has explained, "Section 3-502 requires employers to pay employees either every two weeks or twice per month, while § 3-505 requires them to pay former employees their remaining wages on or before the day the wages would ordinarily have been due." *Haslup v. Johns Hopkins Hosp.*, No. JKB-11-1411, 2011 WL 3648356 at *3 (D. Md. Aug. 8, 2011). Here, however, Plaintiffs have not raised issue with the *timing* of their paychecks. Rather, their dispute is with regard to the *amount* of their paychecks. And, as this Court has repeatedly held, claims for entitlement to wages, such as these, are not covered by the MWPCL because they relate to the amount of wages owed, rather than the timing of payment. *Id.*; *McLaughlin v. Murphy*, 372 F.Supp.2d 465 (D. Md. 2004); *Williams v. Maryland Office Relocators, LLC*, 485 F.Supp.2d 616 (D. Md. 2007); *Tucker v. System Specialist Furniture Installation, Inc.*, No. JFM–07–1357, 2007 WL 2815985 (D. Md. Sept. 26, 2007); *Fisher v. Rite Aid Corporation,* No. RDB–09–1909, 2010 WL 2332101 (D. Md. June 8, 2010); *see also Marshall*, 63 A.3d at 685 ("Thus, by its plain language, section 3-502 addresses only *the timing* of paydays.")[11] Therefore, Counts III and V of Plaintiff Mould's Amended Complaint and Counts III and VI of Plaintiffs Yanek and Lodowski's second amended complaint shall be dismissed.

### 3. Plaintiff Mould's MWHL Overtime Claim (Mould Am. Compl., Count V)

---

[11] The Court takes note of footnote 11 of the *Marshall v. Safeway* opinion, which reads: "In contrast [to section 3-502], section 3-505, which is not at issue in this case expressly requires an employer to pay an employee "*all wages due for work* that the employee performed before the termination of employment." However, the Court does not find this comment to be a sufficient basis to reconsider this Court's section 3-505 jurisprudence.

Plaintiff Mould alleges that Defendants failed to pay him for overtime work, as provided by §§ 3-415 and 3-420 of the MWHL. Md. Code Ann., Labor & Employment §§ 3-415, 3-420. However, § 3-415 expressly provides that it "does not apply to an employer that is: . . . an establishment that is a restaurant." *Gionfriddo v. Jason Zink, LLC*, 469 F. Supp,2d 880, 895 (D. Md. 2011). Therefore, Count V of Mould's amended complaint shall be dismissed.

### 4. Plaintiff Mould's Claim for Violations of the IRC (Mould Am. Compl., Count VII)

Plaintiff Mould alleges that Defendants did not permit "Plaintiff and other servers to report their tips to Defendants for tax purposes." (Mould Am. Compl. ¶ 52). Specifically, Mould alleges that starting in December 2011, Defendants instructed Plaintiff and other servers that, at the end of each shift, when they clocked out via a DIGITAL DINING computer system, they were to enter $0 when prompted to enter the amount of tips earned. (*Id.*) Mould further alleges that Defendants "willfully and fraudulently over-reported tips earned by Plaintiff on his 2012 W-2 by approximately $10,000." (*Id.*, ¶ 53.) Plaintiff therefore claims that Defendants violated § 7434 of the IRC, which provides, in relevant part, that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."[12]  26 U.S.C. § 7434(a).

In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint need only survive the legal sufficiency test. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, the Court finds that Plaintiff's factual allegations are

---

[12] A W-2 is an "information return." 26 U.S.C. § 6724(d)(1)(A)(vii).

sufficient to render "plausible on its face" his claim that Defendants "knowingly and fraudulently" over-reported his tip income on his 2012 W-2 and thereby violated § 7434 of the IRC. Therefore, Defendants' motion to dismiss shall be denied with regard to Count VII of Mould's amended complaint.

## 5. FLSA Minimum Wage and Overtime Claims and MWHL Minimum Wage Claims (Mould Am. Compl., Counts I, II, and IV; Yanek Sec. Am. Compl., Counts I, II, and IV)

Plaintiffs allege that Defendants failed to pay them the minimum wage required by the FLSA and the MWHL. 29 U.S.C. §§206(a), 215(a)(2); Md. Code Ann., Labor & Employment §§ 3-412, 3-419; (Mould Am. Compl. Counts I and II; Yanek Sec. Am. Compl. Counts I and II.) Plaintiffs further allege that Defendants failed to pay them the overtime rate for hours worked in excess of forty in any given week required by the FLSA. 29 U.S.C. §§ 207(a); 215(a)(2); (Mould Am. Compl. Count IV; Yanek Sec. Am. Compl. Count IV.) Defendants, in turn, have asked the Court to dismiss these claims on the basis that they were rendered moot by Defendants' offers of judgment.

Before turning to the issue of mootness, the Court first examines the related—though not determinative—question of whether Defendants' offers to have judgment entered against them constituted offers of judgment pursuant to Rule 68. Rule 68 of the Federal Rules of Civil Procedure provides, in relevant part, that:

(a) Making an Offer; Judgment on an Accepted Offer. At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

(b) Unaccepted Offer. An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.

. . .

(d) Paying Costs After an Unaccepted Offer. If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Fed. R. Civ. P. 68.

"The plain purpose of Rule 68 is to encourage settlement and avoid litigation." *Marek v. Chesny*, 473 U.S. 1, 5 (1986). A corollary to this is that an offer of judgment "must specify a definite sum or other relief for which judgment may be entered and must be unconditional." *Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 764 (4th Cir. 2011) (citing 12 Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 3002, p. 92 (2d ed. 1997)). "This is because," the *Simmons* Court explained, "the plaintiff must know unequivocally what is being offered in order to be responsible for refusing such an offer." *Id*. (citing *Arkla Energy Res. V. Roye Realty & Developing, Inc.*, 9 F.3d 855, 867 (10th Cir. 1993)).

In *Simmons*, the Fourth Circuit found that a settlement offer did not constitute a Rule 68 offer of judgment on the basis of four shortcomings. (*Id*.) First, the offer provided plaintiffs with a five-day window to accept rather than the ten-day window then required by Rule 68. (*Id*.) Second, the offer was not unconditional because it required plaintiffs to submit affidavits stating, among other things, the dates on which they worked overtime. (*Id*.) Third, Defendants did not offer to have judgment entered against them. (*Id*.) Instead, they offered to "enter into a settlement agreement specifying that all claims will be *waived and released*." (*Id*.) (emphasis added). Fourth, the offer required plaintiffs to keep the fact and terms of settlement confidential. (*Id*.)

Here, Defendants made four offers that purported to be offers of judgment pursuant to Rule 68.[13] The first is the June 28, 2013[14] offer (ECF No. 35-2) to plaintiff Mould. There, in a document styled "Defendants' Offer of Judgment to Plaintiff Mould Pursuant to Fed.R.Civ.P.68," Defendants offered to have judgment entered against them in the amount of $40,000. (*Id.* at 1.) The offer remained open until July 15, 2013—exactly 17 days after the offer was mailed to Plaintiff Mould's counsel. (*Id.*) Further, the offer authorized Mould to file a motion for attorneys' fees and a bill of costs, although Defendants reserved all rights to contest any such motion or bill. (*Id.*) The second offer, also to Plaintiff Mould, was made in an email dated August 30, 2013. (ECF No. 35-3.) There, Defendants offered to have judgment entered against them "as to the minimum wage and overtime claims that Mr. Mould has advanced under the Fair Labor Standards Act (FLSA) and Maryland Wage Hour Law (MWHL)" in the amount of $35,151.20. (*Id.*) The offer also specifies that Defendants were "willing to pay an additional amount of attorney's fees and costs per the minimum wage and overtime claims under the FLSA/MWHL, to be determined by the Court." (*Id*) However, this second offer did not provide a deadline for Defendants to respond. (*Id.*) The third and fourth offers were both made on August 1, 2013 to Plaintiffs Yanek and Lodowski respectively. (JKB-13-2183, ECF No. 9-2.) In a document styled "Defendants' Offer of Judgment to Plaintiff Yanek Pursuant to Fed.R.Civ.P.68," Defendants offered Plaintiff Yanek to have judgment entered against them with regard to all counts in the amount of $13,200. (*Id.* at 3.) In a similar document, styled "Defendants' Offer of Judgment to Plaintiff Lodowski Pursuant to Fed.R.Civ.P. 68," Defendants offered Plaintiff Lodowski to have judgment entered against them with regard to all counts in the

---

[13] When evaluating a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. v. United Stats*, 945 F.2d 765, 768 (4th Cir. 1991).

[14] The certificate of service is dated July 28, 2013. (ECF 35-2 at 4.) The Court assumes this is a clerical error and should read June 28, 2013.

amount of $10,750.  (*Id.* at 13.)  Both the third and fourth offers remained open until August 15, 2013—exactly 14 days after the offers were hand-delivered to Plaintiffs Yanek and Lodowski's counsel.  (*Id.* at 4, 5, 15, 16.)  Further, the offers authorized Yanek and Lodowski to file a motion for attorneys' fees and a bill of costs, although Defendants reserved all rights to contest any such motion or bill.  (*Id.* at 3, 14.)  The terms of the offers also provided that Defendants would "pay this Offer of Judgment" only if "all other named Plaintiffs in this case, as of today's date," i.e. Plaintiffs Yanek and Lodowski, "accept[ed] the Offers of Judgment separately served upon their counsel."  (*Id.* at 2, 13.)

The Court finds that the first, third, and fourth offers of judgment (the June 28 offer of judgment to Plaintiff Mould and the August 1 offers of judgment to Plaintiffs Yanek and Lodowski) constitute valid offers of judgment pursuant to Rule 68.  These offers specified a definite sum, were unconditional, and were unequivocal. [15]  The Court recognizes that under the terms of their offers, neither Plaintiff Yanek nor Plaintiff Lodowski could accept their offer unless the other also accepted their own offer.  However, such a requirement is permissible in a Rule 68 offer of judgment, as it comports with the overarching purpose of the rule, namely to "encourage settlement and avoid litigation."  *Marek*, 473 U.S. at 5; *Amati v. City of Woodstock*, 176 F.3d 952 (7th Cir. 1999); *Lang v. Gates*, 36 F.3d 73 (9th Cir. 1994).  Further, Plaintiffs were afforded fourteen days to review the offers as required by Rule 68.  Fed. R. Civ. P. 68(a).  The offers also specifically provided that Defendants consented to have judgment entered against them and did not include any confidentiality clauses.

---

[15] Although these offers of judgment did not offer a sum certain with regard to attorneys' fees, this does not make the offers equivocal or otherwise problematic.  *Simmons*, 634 F.3d at 766 n.8; *O'Brien v. ED Donelly Enters., Inc.*, 575 F.3d 567, 575 (6th Cir. 2009) ("Defendants' offer to pay the reasonable attorneys' fee as determined by the court is consonant with the statutory language which requires that the court 'allow' the reasonable fee when it awards a judgment to a FLSA plaintiff.").

The second offer, however, does not constitute a valid offer of judgment pursuant to Rule 68. Although the August 30, 2013 email from Defendants' counsel clearly provides that Defendants were "willing to pay Mr. Mould and to allow judgment to be entered against them," it did not provide Plaintiff Mould with a deadline for accepting the offer. (ECF No. 35-3.) As the Fourth Circuit has held, an offer that is held open for fewer than the fourteen days required by Rule 68 is not an offer of judgment under Rule 68. *See Simmons*, 634 F.3d at 764 (holding that offer provided plaintiffs with a five-day window to accept rather than the ten-day window then required by Rule 68 was not an offer of judgment under Rule 68). Here, based on the exhibits provided to the Court by Defendants, Defendants omitted to provide Plaintiff Mould with any deadline for accepting their offer. (ECF No. 35-3.)

As sister courts have explained:

> Rule 68 sets forth a rather finely tuned procedure; unlike a normal contract offer, an offer of judgment under the Rule imposes certain consequences that can be costly for the plaintiff who declines the offer. The Rule is thus designed to put significant pressure on the plaintiff to think hard about the likely value of the claim as compared to the defendant's offer. In return, the plaintiff, as we understand the scheme, is guaranteed 10 days to ponder the matter (as though the plaintiff had paid for a 10-day option). If the Rule were to be read as [defendant] urges, the pressure on the plaintiff would be greater than the Rule contemplates, because the Rule so construed would allow a defendant to engage in tactical pressuring maneuvers.

*Richardson v. National R.R. Passenger Corp.*, 49 F.3d 760, 765 (D.C. Cir. 1995) (The deadline has since been extended to fourteen days.). A defendant who wishes to make a Rule 68 offer of judgment must adhere to the procedural requirements for making such an offer. The fourteen-day window is one of the few such requirements, and the Court therefore finds that it was Defendants' duty clearly to convey to Plaintiff that Plaintiff had at least fourteen days to consider the offer. Further, requiring a defendant to explicitly provide that a plaintiff has at least fourteen days to consider the offer conforms with the general notion, put forth in *Simmons*, that

"the plaintiff must know unequivocally what is being offered in order to be responsible for refusing such an offer." *Simmons*, 634 F.3d at 764 (citing *Arkla Energy Res. V. Roye Realty & Developing, Inc.*, 9 F.3d 855, 867 (10th Cir. 1993)). As a result, this Court finds that Defendants' August 30 offer to Plaintiff Mould is not an offer of judgment pursuant to Rule 68 because Defendants' failed explicitly to provide that Plaintiff Mould had at least fourteen days to consider their August 30 offer.

In order to avoid confusion among the parties, the Court next clarifies how these three Rule 68 offers of judgment (the June 28 offer of judgment to Plaintiff Mould and the August 1 offers of judgment to Plaintiffs Yanek and Lodowski) might affect the parties' rights in the course of the litigation.[16] Given that plaintiffs chose not to accept these offers within the timeframe provided by Defendants, the offers are deemed withdrawn. Fed. R. Civ. P. 68(b). As a result, if Plaintiffs fail to obtain judgment that is more favorable than the unaccepted offers[17], they will be liable to Defendants for costs incurred after the offer was made. Fed. R. Civ. P. 68 (c). However, these costs do *not* include attorney's fees. *Champion Produce, Inc. v. Ruby Robinson Co., Inc*, 342 F.3d 1016, 1028 (9th Cir. 2003) ("Because Ruby made an offer of judgment under Rule 68 that exceeded the amount Champion ultimately recovered, the cost-shifting provision of the rule applies. The district court therefore properly awarded post-offer costs (excluding attorneys' fees) to Ruby."). Also, if Plaintiffs fail to obtain judgment that is more favorable than the unaccepted offers, they will not be entitled to recover attorney's fees incurred after the offer

---

[16] Of course, the application of Rule 68 is not before the Court and any ruling on the matter would be premature. However, the Court has noticed some statements in the parties' filings that seem to contradict case law and therefore has deemed it useful to provide the parties with some guidance. In particular, the Court notes that Defendants have asserted that under Rule 68(d) their costs "(*including Defendants' attorneys' fees*)" would be shifted to Plaintiff if he fails to recover in excess of $40,000. (ECF No. 70 ¶ 7) (emphasis added).

[17] Rule 68 is inapplicable, however, if defendants, rather than plaintiffs, obtain judgment. 12 Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 3006 (2d ed. 1997) (collecting cases).

was made, notwithstanding provisions to the contrary in the FLSA and the MWHL. *Marek v. Chesny*, 473 U.S. 1, 10 (1985) ("Civil rights plaintiffs—along with other plaintiffs—who reject an offer more favorable than what is thereafter recovered at trial will not recover attorney's fees for services performed after the offer is rejected.").

The Court now turns specifically to Defendants' claim that Plaintiffs' FLSA minimum wage and overtime claims and MWHL minimum wage claims are moot**.** The Fourth Circuit has held that where an offer of judgment unequivocally offers a plaintiff all of the relief he sought to obtain, the offer renders the plaintiff's action moot. *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 370-71 (4th Cir. 2012). Even where an offer of judgment does not satisfy the formalities of Rule 68, it can still moot a plaintiff's action because the doctrine of mootness is constitutional in nature. *Simmons*, 634 F.3d at 764.

As the court has explained, "[a] case becomes moot 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Id.* at 370 (quoting *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011). In particular, where "defendants ha[ve] offered [a plaintiff] the full amount of damages to which the plaintiff claimed entitlement, there is "no longer any case or controversy." *Id.* (quoting *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986)). Neither the expiration nor the rejection of an offer of judgment revives the case. Indeed, the case becomes moot not because the plaintiff actually *obtains* the full amount of damages but rather because the plaintiff "*could have obtained* through acceptance of the offer all he could have hoped to obtain through litigation." *Bradford v. HSBC Mortg. Corp.*, 280 F.R.D. 257, 263 (E.D. Va. 2012) (emphasis added).

The mootness doctrine applies even in the context of a collective action under the FLSA. This past term, the Supreme Court held that in collective actions under the FLSA, such as the

present one, the entire case should be dismissed for lack of subject-matter jurisdiction if the lone plaintiff's individual claim becomes moot.[18] *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1532 (2013). Thus, [i]f an intervening circumstance deprives the [lone individual] plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* at 1528 (citation and internal quotation marks omitted).

The application of the mootness doctrine in the context of class actions prior to class certification, however, is not a well settled issue. Four circuits have held that a complete settlement offer does *not* moot a putative class action as long as the plaintiff moves for class certification within a reasonable time after discovery. *See Kensington Physical Therapy Inc. v. Jackson Therapy Partners, LLC*, No. 8:11-cv-02467, 2013 WL 5476979 at *5 (D. Md. Oct. 2, 2013) (summarizing the state of appellate case law). However, the Seventh Circuit has held that a complete settlement offer made before the plaintiff moves for class certification moots the plaintiff's putative class action. *Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011). This Court is not aware of any Fourth Circuit ruling on this specific issue. However, ruling on the present motion to dismiss does not require the Court to reach this issue. Therefore, this memorandum will not address the question of whether a complete settlement offer made before the plaintiff moves for class certification moots the plaintiff's putative class action.

The question of mootness therefore turns on whether Defendants' offers offered Plaintiffs all they sought to obtain. The three remaining counts in Plaintiffs Yanek and Lodowski's complaint are: (1) their FLSA minimum wage claim (Yanek Sec. Am. Compl., Count I); (2) their MWHL

---

[18] However, despite taking note of a circuit split, the Court explicitly provided that it did not reach the issue of "whether an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot." *Genesis Healthcare Corp.*, 133 S. Ct. at 1528-29.This Court will therefore continue to regard the Fourth Circuit's holding in *Warren* as binding authority. 676 F.3d 365.

minimum wage claim (Yanek Sec. Am. Compl., Count II); and (3) their FLSA overtime claim (Yanek Sec. Am. Compl., Count IV). Similarly, Plaintiff Mould's (1) FLSA minimum wage claim (Mould Am. Compl., Count I), (2) MWHL mimimum wage claim (Mould Am. Compl., Count II), and (3) FLSA overtime claim (Mould Am. Compl., Count IV) remain. The Court notes that Plaintiff Mould's IRC claim (Mould Am. Compl., Count VII) and FLSA retaliation claim (Mould Am. Compl., Count X) also remain. However, the basis for Defendants' mootness argument is their August 30, 2013 offer of judgment (ECF No. 35-1 at 9-11), which was limited to "the minimum wage and overtime claims that Mr. Mould has advanced under the Fair Labor Standards Act (FLSA) and Maryland Wage Hour Law (MWHL)."[19] (ECF No. 35-3.) Therefore, the Court will focus its analysis on the remedies sought by Plainitffs with regard to (1) their minimum wage FLSA claims, (2) their MWHL minimum wage claims, and (3) their FLSA overtime claims.

In *Warren*, the Fourth Circuit was called upon to determine if an offer of judgment had mooted a plaintiff's claim. 676 F.3d 365. At issue was whether plaintiff could possibly recover more than the $250 that defendants offered to satisfy her claim for actual damages. *Id.* at 371-72. The statute plaintiff was suing under had no statutory cap on actual damages and plaintiff's complaint sought an unspecified award. *Id.* at 371. The Court found that defendants' offer of judgment did not moot plaintiff's case because at that "stage of the proceedings, before any evidentiary hearing or judicial fact finding in the district court," the court "simply [could not] hold that [plaintiff] could not possibly recover more than $250 if her case proceeded to a jury trial." *Id.* at 372.

The Court in *Warren* noted that the offer of judgment would have mooted plaintiff's action if: (1) defendant had "made a specific demand in the amended complaint for actual damages and

[19] As discussed above, Plaintiff Mould's MWHL overtime claim (Mould Am. Compl., Count V) shall be dismissed.

the defendants offered that amount or more or (2) plaintiff had "quantified her alleged damages in response to a discovery request and the defendants offered that amount." *Id.*

Similarly, in *Smith v. Res-Care, Inc*., No. 3:13-5211, 2013 WL 4546042 (S.D.W. Va. Aug 28, 2013), the court found that defendant's offer of judgment did not provide full relief of plaintiff's claims and therefore plaintiff's claims had not been mooted. *Id*. at *5. Specifically, the court noted that:

> Although it may be unlikely that Plaintiff will recover an amount of punitive damages in excess of $9,000, such an award is possible, and Plaintiff need not demonstrate the likeliness of any punitive award at this point. Much like the situation in *Warren*, there has been no evidentiary hearing or judicial fact-finding regarding any potential amount of punitive damages, and the Court will not engage in such fact-finding now. Furthermore, the case is still in the early stages of discovery, and so a determination at this time would be inappropriate.

*Id.*

Here, as in *Warren*, Plaintiffs have not made a specific demand. The Court therefore turns to the damages provisions of the FLSA and the MWHL to determine the scope of possible recovery. The FLSA provides that:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b). This provision is subject to a three-year statute of limitations in the case of a "willful violation" and a two-year statute of limitations otherwise. § 255(a). The FLSA also provides that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." § 216 (b).

The Court further finds that interest—either pre-judgment or post-judgment—is not within the scope of possible recovery. "The purpose of *prejudgment* interest is to make plaintiff

whole." *Quirk v. Baltimore Cnty., Md.*, 895 F.Supp. 773, 790 (D. Md. 1995) (citing *Cline v. Roadway Express, Inc.*, 689 F.2d 481 (4th Cir. 1982) (emphasis added). Pre-judgment interest is at the discretion of the Court, based on a "consideration of the equities of the particular case." *Id.* (citing *Thomas v. County of Fairfax*, 758 F.Supp. 353, 368 (E.D.Va.1991), *aff'd without op.*, 16 F.3d 408, 1994 WL 8202 (4th Cir.1994). *Dole v. Shenandoah Baptist Church*, 899 F.2d 1389, 1401 (4th Cir.1990), *cert. denied*, 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990)).

However:

> The Supreme Court has "held that FLSA's liquidated damages were provided in lieu of calculating the costs of delay—which is the function of prejudgment interest—and therefore a claimant could not recover both prejudgment interest and liquidated damages." *Hamilton v. 1st Source Bank*, 895 F.2d 159, 166 (4th Cir.1990) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 714–16, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)); *accord Masters v. Md. Mgmt. Co.,* 493 F.2d 1329, 1334 (4th Cir.1974) ("The award of liquidated damages more than adequately compensated [plaintiff] for the delay in payment of overtime wages due him, and the district court was correct in its refusal to award pre-judgment interest") (citing *O'Neil*, 324 U.S. at 715, 65 S.Ct. 895); *Ventura v. Bebo Foods, Inc.*, 738 F.Supp.2d 8, 22–23 (D.D.C.2010) (discussing *O'Neil* and noting that, even after the passage of 29 U.S.C. § 260 created the "good faith" exception to the otherwise mandatory award of liquidated damages for violations of the FLSA, "it has been the practice of courts in [the District of Columbia] Circuit to deny prejudgment interest under § 216(b) when a court awards a plaintiff the maximum amount of liquidated damages").

*Kennedy v. A Touch of Patience Shared Housing, Inc.*, 779 F.Supp.2d 516, 527 (E.D. Va. 2011).

Given that Plainitfs should not recover both liquidated damages and pre-judgment interest, the Court finds that pre-judgment interest is not within the scope of possible recovery.

Plaintiffs could, in theory, recover post-judgment interest pursuant to 28 USC § 1961. Indeed, there is no analogous prohibition on post-judgment interest in FLSA jurisprudence. *Kennedy*, 779 F.Supp.2d at 257; *Clancy v. Skyline Grill,* LLC, No. ELH-12-1598, 2012 WL 5409733 at *10 (D. Md. Nov. 5, 2012). However, even if judgment were entered against Defendants, they could easily avoid any such interest by making a payment when judgment is

entered.  Therefore, The Court will not include post-judgment interest in the scope of possible recovery for the purposes of this mootness analysis.

For its part, the MWHL provides that "if an employer pays an employee less than the wage required under this subtitle, the employee may bring an action against the employer to recover the difference between the wage paid to the employee and the wage required under this subtitle." Md. Code Ann., Lab & Empl. §3-427(a).  It further provides that "the court may allow against the employer reasonable counsel fee and other costs."  §3-427(d).  However, Plaintiffs would only be able to recover once for damages resulting from Defendants' failure to pay wages as required by law, even if Plaintiffs were successful in showing Defendants' liability under both the FLSA and the MWHL. *Clancy*, 2012 WL 5409733 at *5 (citing *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 333 (1980); *United States v. Rachel*, 289 F. Supp. 2d 688, 697 (D. Md. 2003)).  Therefore, the scope of what Plaintiffs could possibly recover consists of (1) unpaid wages and (2) liquidated damages in an amount equal to the unpaid wages, both being subject to a three-year statute of limitations at most.  It also includes Plaintiffs' (3) reasonable attorney's fee and (4) costs of the action.  While Plaintiffs could, in theory, recover post-judgment interest, as explained above, the Court does not include these within the scope of what Plaintiffs could possibly recover for the purposes of this mootness analysis.

Plaintiffs have also sought to recover the amounts contributed to the tip pool.  (Mould Am. Compl. at 11, 12; Yanek Sec. Am. Compl. at 15, 17.)  However, neither the FLSA nor the MWHL provide for such a remedy.  Rather, by their plain language, the measure of damages under these statutes is the difference between the minimum wage required and the wage paid by the employer.

Having established the scope of what Plaintiffs could possibly recover, the Court now turns to the content of the offers of judgment to see if they are co-extensive with this scope. With regard to the offers of judgment made to Plaintiffs Yanek and Lodowski, Defendants argue that they have offered "the Plaintiffs *more* than full relief for their FLSA and MWHL claims." (ECF No. 9 at 8.) Defendants offered to have judgment entered against them in the amount of $13,200 with regard to Plaintiff Yanek's claims and $10,750 with regard to Plaintiff Lodowski's claims. In addition, Defendants authorized Plaintiffs Yanek and Lodowski to file a motion for attorney's fees and costs. (JKB 13-2183, ECF No. 9-2 at 3, 14.)

Defendants' claim that their offers of judgment offer more than full relief relies on the calculations of Elana Schulman, a CPA retained by Defendants. (ECF No. 9 at 8; ECF No. 9-4.) As Ms. Schulman explains in her affidavit, she based her calculations on the payroll records provided to her by Defendants' counsel, assuming them to be accurate and complete. (ECF No. 9-4.) Specifically, her "computation involved determining the actual payment each employee received on an hourly basis every week and the number of hours for which the employee was not compensated in accordance with the FLSA." (*Id.*) Further, Ms. Schulman used a three-year look back period. On this basis, she concluded that:

1. Plaintiff Julianne Lodowski is owed $4,826.96 in unpaid minimum wages (FLSA) plus liquidated damages at 2 times her unpaid wages, totaling $9, 653.92. She is also owed $41.34 in unpaid overtime compensation (FLSA) plus liquidated damages at 2 times her unpaid overtime wages totaling $82.68. I base this on the employee wage information listed in the NJG Food Service Inc. Summary Report by Employee provided by the Defendants' counsel.
2. Plaintiff Kathleen Yanek is owed $5,952.85 in unpaid minimum wages (FLSA) plus liquidated damages at 2 times her unpaid wages, totaling $11,905.70. She is also owed $49.81 in unpaid overtime compensation (FLSA) plus liquidated damages at 2 times her unpaid overtime wages totaling $99.62. I base this on the employee wage information listed in the NJG Food Service Inc. Summary Report by Employee provided by the Defendants' counsel.

(ECF No. 9-4.)  The totals calculated by Ms. Shulman come to $12,005.32 for Plaintiff Yanek and $9,736.60 for Plaintiff Lodowski. They include unpaid wages and overtime, as well as liquidated damages.  (*See* ECF No. 9-1 at 8.)  As Defendants explain, they "offered even more than the amounts set forth. Plaintiff Yanek was offered $13,200.00 and Plaintiff Lodowski was offered $10,750.00." (*Id.* at 9.)

The Court agrees with the general principle behind Ms. Schulman's calculation.  However, Plaintiffs Yanek and Lodowski have called into question the accuracy of the payroll records that form the basis of Ms. Schulman's analysis and requested the opportunity to conduct "discovery and [to] have their own expert review Defendants' payroll and any related records."  (ECF No. 14 at 14-15.)  In response, Defendants note that Plaintiffs have not asked for specific discovery that they "legitimately might need to calculate [their] wages, likely because nothing more is needed."  (ECF No. 17 at 7.)  Defendants further note that Plaintiffs bear the burden of proving subject matter jurisdiction.  (*Id.*)

Of course, the Court recognizes that when "a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." *Warren*, 676 F.3d at 371 (quoting *Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009)).  However, in order to satisfy this burden the Court must allow for the development of a proper evidentiary record.  In particular, "when [as here] the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery." *Id.* at 372 (citing *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)).  Much like the court in *Warren*, at this stage in the proceedings, the Court simply cannot hold that Yanek and Lodowski could not possibly recover more than $13,200 and $10,750 respectively. *Id.*

With regard to the August 30, 2013 offer of judgment made to Plaintiff Mould, Defendants likewise allege that they have offered "Plaintiffs [sic] *more* than full relief for their [sic] FLSA and MWHL claims." (ECF No. 35-1 at 9.) Here, however, Defendants' claim rests upon "Plaintiff's own answers to discovery." (ECF No. 56 at 5 n.4.) In particular, in his responses to Defendants' first set of interrogatories, Plaintiff asserted that "he calculates that he worked at least 4,855.14 hours during his employment with Defendants, and of those hours at least 490.56 were overtime . . . . Thus Plaintiff is owed at least $17,575.60 in unpaid wages." (ECF No. 35-4 at 5.) Defendants doubled that amount—to account for liquidated damages—and made an offer of judgment in the amount of $35,151.20. (ECF No. 35-1 at 5-6.)

However, as Defendants themselves have noted (ECF No 56 at 2), Plaintiff's answer to the interrogatory was qualified. In addition to stating that he was owed "*at least* $17,575.60," he noted that this estimate was "[b]ased on the documents currently available to Plaintiff." (ECF No. 35-4 at 5) (emphasis added). He further noted that the answer was given "without the aid of discovery and further information from Defendants and potential witnesses." (*Id.* at 2.) The Court finds that these caveats are sufficient to distinguish this case from the hypothetical fact-pattern in *Warren*, in which a defendant had "quantified her alleged damages in response to a discovery request and the defendants offered that amount." 676 F.3d at 372.

The Court recognizes that there has been more discovery with regard to Mould's claims than there has been with regard to Yanek's and Lodowski's. However, the Court nonetheless finds that even with regard to Mould, at this stage in the proceedings, the Court simply cannot hold that he could not possibly recover more than $35,151.20.[20]

---

[20] In fact, in the report prepared for Defendants by Ms. Schulman with regard to Mould's claims, she calculated that for a full three-year period, Mould's unpaid minimum wages amounted to up to $16,210.17 and his unpaid overtime compensation amounted to up to $1,768.43. (EFF No. 46-3 at 4.) On that basis, Mould could receive up to

Therefore, Defendants' motions to dismiss will be denied without prejudice with regard to counts I, II, and IV of Plaintiff Mould's amended complaint and counts I, II, and IV of Plaintiffs Yanek and Lodowski's second amended complaint.

### B. Plaintiff Mould's Motion for Leave to File a Second Amended Complaint (ECF No. 36).

A motion for leave to amend pleadings filed beyond the deadline set forth in the scheduling order will only be granted if it satisfies both the "good cause" standard of Rule 16(b)(4) and the standard of Rule 15(a)(2) for allowing amendment of pleadings. Fed. R. Civ. P. 16(b)(4); 15(a)(2). *See Moses v. Cowan Distrib. Servs., Inc.*, Civ. No. JKB-10-1809, 2012 WL 527657, at *2 (D. Md. Feb. 16, 2012). *See also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298-99 (4th Cir. 2008) (noting tension between Rule 15 and Rule 16; not reaching district court's Rule 15(a) finding of futility because it affirmed district court's Rule 16(b) application of "good cause" standard); *Odyssey Travel Center, Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 631 (D. Md. 2003) ("once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b); if the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under [Rule] 15(a)").

Here, Plaintiff's motion was filed after the July 25 deadline set forth in the Court's scheduling order. (ECF No. 19.) As a result, Plaintiff must satisfy the good cause standard of Rule 16(b)(4) in addition to the Rule 15(a)(2) standard for allowing amendment of pleadings. However, Plaintiff has failed to demonstrate good cause.

In his reply brief, Plaintiff mentions good cause in the section captioned "Defendants have not, and cannot, identify any prejudice to be suffered by allowing the amendment." (ECF No. 55 at 8.) Specifically, he offers that "[t]he good cause for the amendments . . . is to focus the legal

---

$39,957.20 when those amounts are doubled to account for potential liquidated damages. This figure exceeds the $35,151.20 offered by Defendants.

analysis of those claims in the appropriate direction." (*Id*.)  However, Plaintiff has failed to show the Court why "scheduling deadlines cannot be met despite . . . diligent efforts." *Potomac Elec.*, 190 F.R.D. at 375 (citations omitted).  The analysis under Rule 16(b)(4) is focused on the timeliness of the motion to amend "and the reasons for its tardy submission," rather than its merit or any prejudice it might cause.  *Rassoull,* 209 F.R.D. at 373-74.

The Court notes that Plaintiff was already granted leave once to amend his complaint.  (ECF No. 26).  Plaintiff's prior motion to amend his complaint was filed prior to the July 25 deadline and, therefore, was not subject to the good cause standard of Rule 16(b)(4).  (ECF No. 17.) However, the present motion is untimely and the Court cannot allow Plaintiff to proceed absent a showing of good cause. Indeed, without such a standard, the Court's scheduling order would be little more than a "frivolous piece of paper." *Potomac Electric Power Co.*, 190 F.R.D. at 376 (citations omitted).

Accordingly, Plaintiff Mould's motion for leave to file a second amended complaint (ECF No. 36) will be denied.

### C.  Defendants' Motion to Stay Discovery, Consolidate, and Extend Time (ECF No. 37)

Defendants have requested an extension of time to file their answer to Count X of Plaintiff Mould's amended complaint.  (ECF No. 37.)  Count X was not the subject of Defendants' partial motion to dismiss.  (ECF No. 35.)  Defendants' request shall be granted. Specifically, Defendants' answer to Plaintiff's entire amended complaint—including as to Count X—shall be due by December 21, 2013, pursuant to Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure.

Defendants' request for consolidation was granted by the Court's October 12 order consolidating JKB-13-1305 and JKB-12-2183 for all purposes, including trial.  (ECF No. 74.)

Defendants' request to stay discovery (ECF No. 35) shall be granted. Discovery shall be stayed until January 8, 2014, when the Court will hold a telephone conference to set a schedule for the consolidated case.

### D.  Plaintiff Mould's Motion for Leave to File a Limited Surreply (ECF No. 65)

Pursuant to Local Rule 105.2(a), surreply memoranda are not permitted unless otherwise ordered by the Court. The Court may permit a surreply when the moving party would be unable to contest matters presented to the Court for the first time in the opposing party's reply. *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md.2003) (citing *Lewis v. Rumsfeld*, 154 F.Supp.2d 56, 61 (D.D.C.2001)).

Here, while Plaintiff has alleged that the surreply addresses Defendants' new materials and arguments (ECF No. 65-1), it would not alter the Court's analysis and the motion shall therefore be denied.

### E.  Plaintiffs Yanek and Lodowski's Motion for Leave to File a Second Amended Complaint and Supplemental Motion for Leave to File a Second Amended Complaint (JKB-13-2183, ECF Nos. 18, 20)

Plaintiffs Yanek and Lodowski's second amended complaint seeks to add two plaintiffs, Mr. Clempner and Ms. Schlette. All other changes are mere changes in formatting or corrections of typographical errors.

The Court does not find that this motion is prejudicial to Defendants, futile or in bad faith. Therefore, mindful of the fact that leave to file an amended or supplemental pleading should be "freely give[n] where justice so requires," Fed. R. Civ. P. 15(a)(2), the Court shall grant this motion.[21]

### F.  Plaintiffs Yanek and Lodowski's Motion for Leave to File a Surreply (JKB 13-2183, ECF No. 19)

---

[21] Defendants' motion to compel arbitration with regard to Mr. Clempner (JKB-13-2183, ECF No. 22) shall be addressed in a separate ruling.

Pursuant to Local Rule 105.2(a), surreply memoranda are not permitted unless otherwise ordered by the Court. As before, the Court may permit a surreply when the moving party would be unable to contest matters presented to the Court for the first time in the opposing party's reply. *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md.2003) (citing *Lewis v. Rumsfeld*, 154 F.Supp.2d 56, 61 (D.D.C.2001)).

Here, while Plaintiff has alleged that the surreply addresses Defendants' new materials and arguments (JKB-13-2183, ECF No. 19-1), again, as in the other instance, it would not alter the Court's analysis and the motion shall therefore be denied.

**IV.    CONCLUSION**

Accordingly, an order shall issue to reflect the rulings in this memorandum.


Dated this <u>4th</u> day of December, 2013.

                                        BY THE COURT:



                                        _____/s/_____
                                        James K. Bredar
                                        United States District Judge