FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2013 DEC 12 P 12: 34

CLERK'S OFFICE
AT BALTIMORE

BY_____ _DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**JEFFREY B. MOULD**

    **Plaintiff**

    v.                     **CIVIL NO. JKB-13-1305**

**NJG FOOD SERVICE INC.,** *et al.*

    **Defendants**

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Plaintiff Scott Clempner brought this suit against Defendants NJG Food Service, Inc., OC Crabbag, LLC, Albert Levy, and Nolen Grave (collectively, "Defendants") for violations of the Fair Labor Standards Act of 1928 ("FLSA"), 19 U.S.C. §§ 201 *et seq.* and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Labor & Employment §§ 3-401 *et seq.* Presently before the Court is a motion by Defendants to dismiss Plaintiff Scott Clempner from this action and compel him to submit his claims to arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (JKB-13-2183, ECF No. 22)[1].

### I. BACKGROUND

Clempner, along with Plaintiffs Jeffrey B. Mould, Kathleen Yanek, Julianne Lodowski, and Taylor Schlette, was a server at the Crab Bag. (ECF No. 33 ¶3; ECF No. 91 ¶¶ 3, 4, 5, 6.) Clempner was employed there from March 2011 until his resignation on September 29, 2013.

Plaintiff Mould filed his complaint in the present case on May 1, 2013. (ECF No. 1.) On July 26, 2013, Plaintiffs Yanek and Lodowski filed their complaint against Defendants. (JKB-

---

[1] Citations to the docket in JKB-13-2183 refer to documents filed in the matter of *Yanek v. NJG Food Services,* JKB-13-2183, prior to its consolidation with the instant matter. (ECF No. 74.)

1

13-2183.) On November 12, 2013, Plaintiff Mould's action and Plaintiff Yanek and Lodowski's action were consolidated under this caption for all purposes, including trial. (ECF No. 74).

On October 3, 2013, Plaintiffs Yanek and Lodowski filed a motion for leave to file a second amended complaint that added Clempner as a named plaintiff. (JKB-13-2183, ECF No. 18.) On November 5, this Court granted Plaintiffs Yanek and Lodowski's motion. (ECF No. 90). On the basis of Plaintiffs Yanek and Lodowski's motion, on October 21, 2013, Defendants filed the motion to compel arbitration with regard to Clempner that is presently before the Court. (JKB-13-2183, ECF No. 22.)

Both parties agree that on June 24, 2013, Clempner signed an "arbitration policy" with Defendants. (JKB-13-2183, ECF No. 22-1.) In relevant part, this arbitration contract provides that:

> As a condition of continued employment, and in exchange for One U.S. Dollar ($1.00) and the mutual promises expressed herein, both Scott Clempner ("employee") and NJ Food Service, Inc. and OC Crab Bag, LLC ("d/b/a the Crab Bag") collectively agree that is [sic] preferable to choose to arbitrate any dispute that we may have instead of litigating in court before a judge or jury.
> Therefore, we agree that [sic] to arbitrate any and all claims between employee and The Crab Bag, arising out of the employment relationship, except such claims arising under criminal laws, and worker compensation or unemployment insurance statutes.

(*Id.*) On the basis of this arbitration policy, Defendants argue that this Court should dismiss Clempner from this action and compel him to arbitrate his claims.

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *PC Const. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 478 (D. Md. 2012). A petitioner must demonstrate:

2

(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect[,] or refusal of the defendant to arbitrate the dispute.

*Id.* (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002)). "[C]ourts must be mindful that the FAA reflects 'a liberal federal policy favoring arbitration agreements.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Either a stay and order to compel arbitration or dismissal may be the appropriate remedy where a party has failed to arbitrate under a valid agreement. *Aggarao v. MOL Ship Management Co., Ltd.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012).

Before dismissing a suit or compelling arbitration, however, the court must determine whether the arbitration agreement that is claimed to govern the dispute between the parties is valid and enforceable. *See Noohi v. Toll Bros.*, Inc., 708 F.3d 599, 603, 605-06 (4th Cir. 2013); *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 937-38 (4th Cir. 1999). Under the FAA, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Noohi*, 708 F.3d at 606 (quoting *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011)). Arbitration agreements are "unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2). Thus, although the judicial inquiry is "highly circumscribed," it is focused both on ensuring there was adequate contractual formation in the agreement, including valid consideration, and that the agreement itself is not unfair, unconscionable, or otherwise defective in ensuring the claimant can "effectively . . . vindicate his or her statutory cause of action in the arbitral forum." *See Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) (quoting *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000)); *see also Hooters*, 173 F.3d at 938. Agreements to arbitrate may not be invalidated,

however, "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746.

### III. ANALYSIS

Applying these principles to the arbitration agreement between Clempner and Defendants, a first issue is whether this agreement "cover[s] the dispute." *PC Const. Co.*, 871 F. Supp. 2d at 478. Indeed, it is unclear whether an agreement "to arbitrate any dispute that we may have" and "to arbitrate any and all claims . . . arising out of the employment relationship" applies retrospectively or not. Here, the cause of action accrued prior to June 24, 2013, when Clempner signed the arbitration policy. However, Plaintiffs Yanek and Lodowski both filed their original complaint and sought to add Clempner as a named plaintiff after June 24.

In interpreting the arbitration agreement, this Court is guided by the fact that "due regard must be given to the federal policy favoring arbitration and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Adkins*, 303 F.3d at 500 (quoting *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)). Therefore, this Court interprets the arbitration agreement as applying to causes of action that accrued prior to the date of the arbitration policy.

The Court now turns to the issue of whether any "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate" the arbitration policy. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). In particular, here, Plaintiff has challenged the arbitration policy on the grounds of unconscionability. (ECF No. 28 at 14-16.) The Court's analysis with regard to this issue is governed by the substantive law of Maryland. *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005).

In *Walther v. Sovereign* Bank, the Maryland Court of Appeals defined an unconscionable contract as one "characterized by 'extreme unfairness,' which is made evident by '(1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party.'" 872 A.2d 735, 743-44 (Md. 2005) (quoting *Black's Law Dictionary* 1560 (8th ed. 2004)). Thus, a contract is unconscionable only if it is both procedurally and substantively unconscionable.

The *Walther* Court held that where a contract is one of adhesion, it is not "automatically deemed *per se* unconscionable." *Id.* at 746. However, a finding that a contract is one of adhesion is sufficient to establish procedural unconscionability and continue the inquiry into substantive unconscionability. *Id.* at 746-47 ("[A]ssuming *arguendo* that the Disclosure Agreement signed by petitioners is in fact a contract of adhesion, that is not the end of the inquiry—we must examine the *substance* of the particular provision at issue, the arbitration clause, to decide whether it is unconscionable.")

A contract of adhesion is an agreement "that is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." *Id.* at 756 (quoting *Restatement (Second) of Conflict of Laws* §187 cmt. b (1971). Here, the Court finds that Plaintiff was presented the arbitration policy on a 'take-it-or-leave-it' basis by his employer and had no real opportunity to bargain about its terms. In fact, although Defendants take issue with Plaintiff's allegation that "Defendants told Mr. Clempner and his co-workers that they either agree to the terms of the arbitration policy or be fired" (ECF No. 86-1 at 9, quoting ECF No. 28 at 15), they do not appear to contest that the arbitration policy was presented on a 'take-it-or leave-it' policy. Therefore, the Court finds that the arbitration policy was procedurally unconscionable.

5

With regard to substantive unconscionability, the Court notes that arbitration agreements agreements, like all contracts "ordinarily require consideration." *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656, 661 (Md. 2003). "In Maryland, consideration may be established by showing a benefit to the promisor or a detriment to the promisee. In particular . . . the forebearance to exercise a right or pursue a claim can constitute sufficient consideration to support an agreement." *Id.* However, "employment or continued employment [of the employee] does not act as consideration in return for [the employee's] promise to arbitrate." *Id.* at 666; *Raglani v. Ripken Professional Baseball*, 939 F. Supp.2d 517, 522 (D. Md. 2013). Rather, in an enforceable arbitration agreement "each party has promised to arbitrate disputes arising from an underlying contract." *Cheek*, 835 A.2d at 665. Thus, an arbitration policy must contain sufficient consideration, in the form of "a mutual exchange of promises to arbitrate." *Id.* ; *Noohi*, 708 F.3d at 609; *Raglani*, 939 F. Supp.2d at 522-23.

In *Noohi v. Toll Bros., Inc.*, the Fourth Circuit, applying *Cheek*, found that an arbitration policy was unenforceable for lack of consideration where it "unambiguously [bound] only the buyer." 708 F.3d at 611.

Here, the arbitration agreement unambiguously binds *both* Clempner and the OC Crab Bag, LLC with regard to *prospective* causes of action. Indeed, it reads that both parties "collectively agree that [sic] is preferable to choose to arbitrate any dispute that we may have." (JKB-13-2183, ECF No. 22-1.) It further provides that "we agree that to [sic] arbitrate any and all claims between employee and The Crab Bag, arising out of the employment relationship." (*Id.*)

However, the Court finds that there is no meaningful exchange of promises to arbitrate with regard to causes of action that had already accrued at the date of the contract. Here, at the time of the contract, Clempner already had a cause of action against Defendants—namely the FLSA

6

and MWHL claims that form the basis of this action. However, Defendants had no cause of action against Clempner. As a result, the terms of this contract are unreasonably favorable to Defendants. The contract requires Clempner to arbitrate his already-accrued FLSA and MWHL claims. However, Defendants—having no accrued causes of action—offer nothing in exchange. As a result, the Court finds that with regard to causes of action that had already accrued at the time of the contract, the arbitration policy is substantively unconscionable.

The Court recognizes the Fourth Circuit's instruction that "[i]n examining whether an arbitration agreement is a valid contract, [a court is to] examine only the language of the arbitration agreement itself." *Hill*, 412 F.3d at 543 (citing *Cheek*, 835 A.2d at 664-65). In particular, the court in *Hill* found that "the court below, per *Cheek*, was not allowed to look beyond the separate Arbitration Agreement, signed by the parties, to determine whether the agreement was supported by consideration." *Id.* at 543. However, here, the Court is not looking to other contractual provisions or employer policies to interpret the provisions of the arbitration policy. Indeed, the Court's interpretation of the policy is limited to the four corners of the documents. Rather, the Court simply takes note of the fact that, in light of the party's legal claims at the time of the contract, its "terms are unreasonably favorable to the more powerful party." *Walther*, 872 A.2d at 426-27 (quoting 8 Richard A. Lord, *Williston on Contracts* § 18:10 (4th ed. 1998)). The very purpose of the doctrine of unconscionability is to provide relief from such "one-sided terms of a contract." *Carlson v. General Motors Corp.* 883 F.2d 287, 296 n.12 (4th Cir. 1989). Therefore, the Court finds that the contract is both procedurally and substantively unconscionable.

## IV. CONCLUSION

Based on the reasons stated above, the Court finds that the arbitration policy is unconscionable and therefore unenforceable with regard to causes of action that accrued prior to June 24, 2013. Clempner's claims in the present action accrued prior to June 24, 2013. Therefore, Defendants' motion to compel arbitration is DENIED.

Dated this _11_ day of December, 2013.

BY THE COURT:

_____
James K. Bredar
United States District Judge